# Exhibit A

FILED
5/14/2021 3:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL

13336506

Cook County Law District 1 - Chicago
Office of the Presiding Judge - Suite 2005
Richard J. Daley Center
50 West Washington Street
Chicago, Illinois 60602

Leonard A. McGee    )  Civil Action NO.: 2021L004998
8956 S. Bishop Street   )  Judge: _____
Chicago, IL 60620    )
Plaintiff       )
          )
Kenneth A. White    )
36473-060 FCI McKean   )
P.O. Box 8000     )
Bradford, PA 16701    )
Plaintiff       )
          )
          )
    V.      )
          )
Fifth Third Bank     )
222 S. Riverside Plaza   )
Chicago, IL 60606-6886  )
Defendant      )
          )
Fifth Third Bank     )
Jennifer Murphy: Office   )
Of The President     )
222 S. Riverside Plaza   )
Chicago, IL 60606-6886  )
Defendant      )
          )
John and Jane Does 1-10  )

## Cook County Law District 1 – Chicago

The complaint of the Plaintiffs: Leonard A. McGee and Kenneth A. White respectfully shows and alleges as follows:

  1. The Plaintiff Leonard A. McGee is a resident of the state of Illinois, 8956 S. Bishop Street, Chicago, IL 60620.

FILED DATE: 5/14/2021 3:14 PM   2021L004998

2. The Plaintiff Kenneth A White is a resident of the state of Pennsylvania, P.O. Box 8000, Bradford, PA 16701.

3. The Defendant Fifth Third Bank does business in the state of Illinois, 222 S. Riverside Plaza, Chicago, IL 60606-6886.

4. The Defendant Jennifer Murphy is a resident of the state of Illinois, 222 S. Riverside Plaza, Chicago, IL 60606-6886

5. John and Jane Does 1-10 are residents of the state of Illinois.

## FACTS

6. The above Defendant, Fifth Third Bank reported derogatory information and committed defamation of character against Plaintiff Leonard A. McGee, inaccurately, showing Plaintiff McGee's credit lines as suspended on 04/20/2020. This was done in the remarks section so that it does not count as a "derogatory remark", but like paragraph 17 of the contract states, it does make other creditors believe you have committed fraud to open the account. This inaccurate information is being reported to all the major reporting agencies: Equifax Credit Information Service; TransUnion LLC; Experian; and Innovis, causing disastrous repercussions to the Plaintiff's business, as well as personal life. This inaccurate information has caused other creditors to refuse to do business with the Plaintiff, resulting in the hindrance of the completion of his new night club.

7. Actions taken by the Defendants that have negatively affected Plaintiff's credit report and business include a Citi Diamond Preferred Card's credit line of $10,000 being cut to $5,130, a Citi American Airlines AAdvantage Card's credit line of $5,000 being cut to $3,400, a Chase Freedom Card's credit line of $2,200 being cut to $500, a Chase Slate card's credit line of $2,000 being cut to $500, a Chase Southwest Rapid Rewards card's credit line of $12,600 being cut to $10,600, a Discover Business IT card's credit line of $5,000 being cut to $2,300, an American Express Green card's credit line of $20,000 being cut to $4,500, an American Express Blue Business Plus card's credit line of $10,000 being cut to $8,500, an American Express Blue Business Cash

FILED DATE: 5/14/2021 3:14 PM 2021L004998

card's credit line of $5,000 being cut to $1,000. The result of those changes was a twenty point increase in Plaintiff's credit card usage and a twenty percent decrease in Plaintiff's credit scores. This caused new potential creditors to refuse to do business with Plaintiff. The actions taken by the Defendant's were not due to any negative or delinquent payments of the part of Plaintiff, they are solely because of Plaintiff McGee having a verbal disagreement with customer service. This was done in spite and in order to deliberately cause harm to the Plaintiffs.

8. Plaintiff has credit card, and three equity lines with the Defendant Fifth Third Bank, Equity Line 1 #887140457 for $18,600.00 with a balance of $15,898.00; Equity Line 2 #887120293 with a balance of $15,898.00; and Equity Line 3 #885755233 for $10,800.00 with a balance of $9,060.

9. In late February 2020 Plaintiff McGee drew a total of $100,000.00 from several lines of credit to purchase the commercial building located at 3530 W. 63rd St, Chicago, Il 60629. Then in mid March Plaintiff McGee transferred to Northern Trust Bank for personal banking services. A week later Plaintiff McGee realized the credit limit of his Fifth Third TRIO card had been cut by nearly 40%. Plaintiff McGee then called to inquire why that had happened, and expressed his concern about the change affecting a prearranged commercial mortgage, to be completed in April of 2020. Plaintiff McGee was informed that I was the result of an annual review. Plaintiff McGee requested additional information because the last review had taken place in mid-November 2019. By the time the call ended, and having no pertinent information, Plaintiff McGee became frustrated and lost his temper with the young woman in Customer Service.

10. As a result of that phone call, Plaintiff McGee later learned that a third annual review had been done in less that six months time. All three of Plaintiff McGee's lines of credit with Fifth Third Bank had been permanently suspended, and a notation placed on all four credit reports. In the months since Defendants Fifth Third Bank vindictively added the notation to Plaintiff McGee's credit reports, his scores have dropped on average another 80 points, causing several other banks to repeatedly cut Plaintiff McGee's credit limits in direct response to the actions taken by the Defendants Fifth Third Bank.

FILED DATE: 5/14/2021 3:14 PM    2021L004998

11. Plaintiffs have completed the rehab on the nightclub, and it is time for the financial background for Plaintiff's liquor license, and time to apply for a mortgage, so that Plaintiffs can consolidate debts into a single payment. Defendants Fifth Third Bank refuse to remove the notation from the Plaintiff's credit report. Due to this disruption in Plaintiffs ability to complete his nightclub, it will require Plaintiffs to file bankruptcy in the next three to five months. This notation remark placed by Defendants Fifth Third Bank is causing other financial institutions to shy away from the Plaintiffs, disrupting nearly all of Plaintiffs planning and budgeting, and if not remedied immediately, placing Plaintiffs well beyond the point of no return.

12. Plaintiffs Leonard A. Mcgee and Kenneth A. White are business partners, and dually invested in this nightclub. Defendants Fifth Third Bank are causing Plaintiff Kenneth A. White to lose the $50,000.00 he invested by placing the notation remark. Plaintiff Kenneth A. White is relying on the progress of this nightclub in order to provide financially for he and his family, being fifty-fifty partners.

13. At the time that the Defendants Fifth Third Bank suspended Plaintiff Mcgee's credit lines, Plaintiff Mcgee had been less than 60 days sine his credit lines had had a zero balance, and Plaintiff Mcgee had had no late or missed payments on any of his reports in the last ten years. Plaintiff Mcgee has used his credit lines in the same manner a number of times before, and has had no problems, with Defendants Fifth Third Bank, or any other bank.

14. Since Plaintiff's filing a complaint with the BBB regarding their practices, Defendants Fifth Third Bank terminated Plaintiff's equity lines.

15. The actions taken by the Defendant's Fifth Third Bank have not only hindered the completion of Plaintiff's business, but cost the Plaintiffs a substantial loss of revenue, as well as causing investors to decline to fund any further project.

16. Plaintiffs reallege and incorporate by reference paragraphs 1-15 herein.

## LEGAL CLAIMS

17. Plaintiffs assert the following claims:

   (a) Defamation;
   (b) Negligent failure to correct inaccurate information in timely manner;
   (c) Defendants Fifth Third Bank intentionally violated the Fair Credit Report Act;
   (d) Defendants Fifth Third Bank violated a legal contract;
   (e) Discrimination.

18. Plaintiffs have been, and will continue to be irrepairably injured by the conduct of the Defendants Fifth Third Bank, unless this Honorable Court grants the declaratory and injunctive relief sought herein.

19. Plaintiff prays that the aforementioned agencies and/or companies are forced to cease and desist all attempts at any further reporting and/or notation remarks on any and all credit reporting agencies of the Plaintiff Mcgee.

20. Plaintiff respectfully requests an updated copy of the credit reports mention herein indicating that all negative, inaccurate, deragatory information and notation remarks has been removed. as indictated herein accordingly.

## PRAYER AND RELIEF

Wherefore, these Pro Se Plaintiffs pray that this Honorable Court enter judgment in Plaintiff's favor.

FILED DATE: 5/14/2021 3:14 PM  2021L004998

FILED DATE: 5/14/2021 3:14 PM 2021L004998

21. A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States of America and the state of Illinois.

22. A preliminary and permanent injunction ordering Defendants Fifth Third Bank to remove the notation remarks from Plaintiff's credit reports, and to forgive the three equity lines of credit that Plaintiff has with Defendant Fifth Third Bank.

23. Compensatory damages against Defendants in the amount of $300,000.00, as well as punitive damages in the amount of $500,000.00. Plaintiffs also seek compensatory damages for lost revenue each month caused by the delays in the completion of the nightclub due to the notation remarks in the amount of $50,000.00 per month until the successful opening of the business.

24. A jury trial on all issues, triable by a jury.

25. Plaintiffs seek recovery of any and all costs in this suit and any other legal fees.

26. Any other relief that the court deems just, proper and attainable.

4/9/21
_____
Dated

_____
Leonard A. McGee
8956 S. Bishop Street
Chicago, IL 60620
Plaintiff

_____
Kenneth A. White
36473-060 FCI McKean
PO Box 8000
Bradford, PA 16701
Plaintiff

6

FILED DATE: 5/14/2021 3:14 PM   2021L004998

## VERIFICATION

I have read the foregoing complaint, and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief and as to those I believe them to be true.

I, Plaintiffs Leonard A. McGee and Kenneth A. White, hereby certify under penalty of perjury that the foregoing is true and correct.

Execute in Erie, PA on this _____April 9_____ day of 2021

Leonard A. McGee
8956 S. Bishop Street
Chicago, IL 60620
Plaintiff

Kenneth A. White
36473-060 FCI McKean
PO Box 8000
Bradford, PA 16701
Plaintiff

FILED DATE: 5/14/2021 3:14 PM   2021L004998

**EXHIBIT A**

FILED DATE: 5/14/2021 3:14 PM    2021L004998

## RE: I need a bit of advice!

### Paulson, Nathan <Nathan.Paulson@53.com>

Wed 1/27/2021 1:41 PM

To: Len Mcgee <lmcgee3@hotmail.com>

Hey Leonard, I don't even have messages from December anymore let alone July. I know they sent out letters to customers but with all the changes in lending during the pandemic there have been dozens of 'bulletins' or announcements. I know they reduced certain credit lines for various reasons – however I'm in an entirely different role now and think you'd be most successful getting details from a branch manager nearest you. If there's something specific you're looking for let me know and I'll see if I can connect you with the right person.

Best,
Nate Paulson

**Nathan J. Paulson**

*Officer - Preferred Relationship Manager*

 **Fifth Third Preferred** | Willis Tower – 233 S. Wacker Dr. | NMLS 1471234 | Chicago, IL 60606
Direct: 312.756.5408 | Fax: 312.756.5405 | MD G26441

**The Preferred Banking Client Service Center** is available 24 hours a day, seven days a week by calling **877-793-8889.**

**From:** Len Mcgee <lmcgee3@hotmail.com>
**Sent:** Wednesday, January 27, 2021 1:22 PM
**To:** Paulson, Nathan <Nathan.Paulson@53.com>
**Subject:** Re: I need a bit of advice!

> **CAUTION EXTERNAL EMAIL**
> DO NOT open attachments or click on links from unknown senders or unexpected emails

Hello Nate,

Is there any way you could send me a copy of the bulletin that was sent out about the lines of credit, that you referred to in your email below.

Thanks,

Len McGee

**From:** Paulson, Nathan <Nathan.Paulson@53.com>
**Sent:** Monday, July 20, 2020 10:29 AM
**To:** Len Mcgee <lmcgee3@hotmail.com>
**Subject:** RE: I need a bit of advice!

Leonard, while I am not personally the employee that can assist sorting this out, I will make calls today and get some answers for you. I have a couple people in mind who have been dealing with lines being suspended/decreased as a result of some changes. I will get some clarity from them and report back to you. I can absolutely assure you that this is not personal and was discussed in a company wide bulletin that this would be happening. Let me get some more facts on this.

**Nathan J. Paulson**

*Preferred Relationship Manager*

 **Fifth Third Preferred |** Willis Tower – 233 S. Wacker Dr. | NMLS 1471234 | Chicago, IL 60606
Direct: 312.756.5408 | Fax: 312.756.5405 | MD G26441

**The Preferred Banking Client Service Center** is available 24 hours a day, seven days a week by calling **877-793-8889.**

**From:** Len Mcgee [mailto:lmcgee3@hotmail.com]
**Sent:** Thursday, July 16, 2020 10:59 PM
**To:** Paulson, Nathan
**Subject:** I need a bit of advice!

Hello Nate,

I know that it has been a while, and that this question may not be in your wheelhouse, but maybe you can point me in the right direction. Back in early March I transferred my direct deposit to a different bank, and about a week later I realized that the limit on my Fifth Third credit card had been cut by about 40%. I called to inquiry why it had happened, and to express my concern. I was told that it was the result of my annual review, I explained that I would need more details, because the last review had taken place in mid-November 2019. By the time the call ended I had become frustrated, and lost my temper with the young woman in Customer Service.

Less than two weeks after that phone call I was informed of the results of my third annual review in less than six months. All three of my Lines of Credit had been suspended, and a notation was placed on all three of my credit reports. I was upset, but at that time was not very concerned. In February I had drawn down my lines of credit, as well as several credit cards to purchase a commercial building. My credit score was down about hundred or so points, but I was still at 670. In the months since Fifth Third added that notation to my credit reports my score has dropped another 80 points, because several other banks have also cut my credit limits in direct response to the actions taken by Fifth Third.

Now that I am nearing the end of the rehab on my Nightclub, it is almost time for the financial back ground check for my Liquor License, and time to apply for my mortgage, so that I can consolidate my debts into a single payment. I need that notation removed from my credit report, otherwise I will be forced to file bankruptcy in the next three to five months. A number of unforeseeable things have converged to disrupt nearly all of my planning and budgeting, and I am well beyond the point of no return. If for any reason I am not able to get a mortgage, I will have to sell the building which will take nine months to a year to complete in this market. Currently I have 90 to 120 days of cash on hand, and with a possible second round of covid19 shut downs coming, it could be Christmas time when I open for business.

I have already contacted the credit bureaus, the BBB, and my other creditors, I got the same answer from all them, that my lines of credit can be suspended for any reason, and as long as they are suspended the notation will remain on the reports. Nate, this feels personal, when my lines were suspended it had been less than 60 days since they all had a zero balance, and I have no late or missed payments on any of my reports in the last ten years. I also have used my lines of credit in the same manner a number of times before, and had no problems, with Fifth Third or any other bank. Whatever information you can provided me with, would be a big help.

Thanks,

Leonard McGee

FILED DATE: 5/14/2021 3:14 PM 2021L004998

This e-mail transmission contains information that is confidential and may be privileged. It is intended only for the addressee(s) named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please erase it from your computer system. Your assistance in correcting this error is appreciated.

This e-mail transmission contains information that is confidential and may be privileged. It is intended only for the addressee(s) named above. If you receive this e-mail in error, please do not read, copy or disseminate it in any manner. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this information is prohibited. Please reply to the message immediately by informing the sender that the message was misdirected. After replying, please erase it from your computer system. Your assistance in correcting this error is appreciated.

## FIFTH THIRD BANK
(CHICAGO)
P.O. BOX 630900 CINCINNATI OH 45263-0900

Statement Period Date: 2/8/2020 ~ 3/6/2020
Account Type: 5/3 E-ACCESS ACCOUNT
Account Number: ████5841

LEONARD A MCGEE
8956 S BISHOP ST
CHICAGO IL 60620-4906



0

33116

Banking Center: Northbrook
Customer Service: 800-972-3030
Internet Banking & Bill Payment: 53.com

THANK YOU FOR BEING A FIFTH THIRD CUSTOMER. WE GREATLY VALUE YOUR TRUST AND CONFIDENCE AND SINCERELY APPRECIATE THE OPPORTUNITY TO SERVE YOU.

## Account Summary - ████5841

| 02/08 | Beginning Balance | $16,740.96 | Number of Days in Period | 28 |
|---|---|---|---|---|
| 1 | Checks | $(2,000.00) | | |
| 36 | Withdrawals / Debits | $(106,276.07) | | |
| 10 | Deposits / Credits | $96,151.75 | | |
| 03/06 | Ending Balance | $4,616.64 | | |

## Check

* Indicates gap in check sequence    I = Electronic Image    s = Substitute Check

1 check totaling $2,000.00

| Number | Date Paid | Amount |
|---|---|---|
| 0000 i | 02/24 | 2,000.00 |

## Withdrawals / Debits

36 items totaling $106,276.07

| Date | Amount | Description |
|---|---|---|
| 02/11 | 15.00 | WIRE TRANSFER FEE |
| 02/14 | 21.02 | WEB INITIATED PAYMENT AT CITI CARD ONLINE PAYMENT 420037411371502 021420 |
| 02/14 | 100.00 | WEB INITIATED PAYMENT AT CHASE CREDIT CRD EPAY 4539839644 021420 |
| 02/14 | 100.00 | WEB INITIATED PAYMENT AT BK OF AMER VISA ONLINE PMT CKF312541633POS 021420 |
| 02/14 | 100.00 | WEB INITIATED PAYMENT AT AMEX EPAYMENT ACH PMT M5868 021420 |
| 02/14 | 139.05 | WEB INITIATED PAYMENT AT DISCOVER E-PAYMENT 4807 021420 |
| 02/14 | 316.00 | WEB INITIATED PAYMENT AT CITI CARD ONLINE PAYMENT 430037410834303 021420 |
| 02/18 | 26.66 | DEBIT CARD PURCHASE AT 6148 AMC GALEWOOD, CHICAGO, IL ON 021520 FROM CARD#: XXXXXXXXXXXX9664 |
| 02/18 | 11.01 | WEB INITIATED PAYMENT AT CITI CARD ONLINE PAYMENT 420040266289385 021820 |
| 02/18 | 60.00 | WEB INITIATED PAYMENT AT APPLECARD GSBANK PAYMENT 1900626 021820 |
| 02/20 | 1,000.00 | TELEPHONE INITIATED PAYMENT AT PROSPER MARKETPL PMITGr19.4 24309850 021820 |
| 02/24 | 500.00 | Bluebird TRANSFER 7531846 022020 |
| 02/24 | 98,795.28 | OUTGOING WIRE TRANS 022420 |
| 02/24 | 30.00 | WIRE TRANSFER FEE |
| 02/25 | 160.00 | SENT ZELLE PMT ID FTB008181507 |
| 02/25 | 100.00 | 5/3 ONLINE TRANSFER TO CC: XXXXXXXXXXXX2100 REF # 00633387075 |
| 02/26 | 10.98 | DEBIT CARD PURCHASE AT POPEYES 2579, EVERGREEN PAR, IL ON 022520 FROM CARD#: XXXXXXXXXXXX9664 |
| 02/26 | 50.00 | DEBIT CARD PURCHASE AT CASH APP*LUCRETIA, 4153753176, CA ON 022520 FROM CARD#: XXXXXXXXXXXX9664 |
| 02/26 | 5.67 | WEB INITIATED PAYMENT AT USAA.COM PAYMNT CREDIT CRD 995593421077610 022620 |
| 02/26 | 100.00 | WEB INITIATED PAYMENT AT DISCOVER E-PAYMENT 4807 022620 |
| 02/27 | 8.00 | DEBIT CARD PURCHASE AT CASH APP*JOHN WOOD, 4153753176, CA ON 022620 FROM CARD#: XXXXXXXXXXXX9664 |
| 02/28 | 20.00 | DEBIT CARD PURCHASE AT CASH APP*LEONARD M, 4153753176, CA ON 022720 FROM CARD#: XXXXXXXXXXXX9664 |
| 03/02 | 42.12 | WEB INITIATED PAYMENT AT AMEX EPAYMENT ACH PMT M1578 030220 |
| 03/02 | 100.00 | WEB INITIATED PAYMENT AT AMEX EPAYMENT ACH PMT M3568 030220 |
| 03/02 | 116.53 | WEB INITIATED PAYMENT AT AMEX EPAYMENT ACH PMT M0294 030220 |
| 03/02 | 154.34 | 5/3 ONLINE TRANSFER TO IL: XXXXXXX5223 REF # 00634619093 |
| 03/02 | 263.75 | 5/3 ONLINE TRANSFER TO IL: XXXXXXX0293 REF # 00634619119 |
| 03/02 | 266.27 | 5/3 ONLINE TRANSFER TO IL: XXXXXXX0457 REF # 00634619136 |

FILED DATE: 5/14/2021 3:14 PM    2021L004998

**FIFTH THIRD BANK**

FILED DATE: 5/14/2021 3:14 PM   2021L004998

## Withdrawals / Debits - continued

| Date | Amount | Description |
|------|--------|-------------|
| 03/03 | 1,000.00 | DEBIT CARD PURCHASE AT CASH APP*LUCRETIA, 4153753176, CA ON 030220 FROM CARD#: XXXXXXXXXXXX9664 |
| 03/03 | 491.20 | WEB INITIATED PAYMENT AT USAA.COM PAYMNT LOAN 39587344 030320 |
| 03/04 | 100.00 | WEB INITIATED PAYMENT AT NORDSTROM PAYMENT 043000092484296 030420 |
| 03/04 | 100.00 | WEB INITIATED PAYMENT AT PNC BANK NA ONLINE PYM 043000092517894 030420 |
| 03/04 | 133.19 | WEB INITIATED PAYMENT AT TRAVELERS PER INSUR BPITPI018216630 030420 |
| 03/04 | 1,000.00 | TELEPHONE INITIATED PAYMENT AT PROSPER MARKETPL PMITGr19.4 24578454 030420 |
| 03/06 | 400.00 | WEB INITIATED PAYMENT AT CITI CARD ONLINE PAYMENT 430055370374765 030620 |
| 03/06 | 500.00 | Bluebird TRANSFER 7559284 030620 |

## Deposits / Credits

**10 items totaling $96,151.75**

| Date | Amount | Description |
|------|--------|-------------|
| 02/11 | 10,000.00 | 5/3 ONLINE TRANSFER FROM IL: XXXXXXX5223 REF # 00630971678 |
| 02/11 | 18,000.00 | 5/3 ONLINE TRANSFER FROM IL: XXXXXXX0293 REF # 00630971780 |
| 02/11 | 18,000.00 | 5/3 ONLINE TRANSFER FROM IL: XXXXXXX0457 REF # 00630971855 |
| 02/11 | 35,000.00 | INCOMING WIRE TRANS 021120 |
| 02/12 | 2,500.00 | WEB INITIATED PAYMENT AT USAA CHK-INTRNT TRANSFER L MCGEE 021220 |
| 02/12 | 3,150.15 | TCS TREAS 449 TAX REF XXXXX5879201849 021220 |
| 02/21 | 1,750.81 | ITC INFOTECH (US DIRECT DEP 5400531743967GP 022120 |
| 02/25 | 2,000.00 | WEB INITIATED PAYMENT AT NFCU ACH P2P LEONARD MCGEE 022520 |
| 02/25 | 4,000.00 | CITIBANK BT DEPOSIT 22000509987 022520 |
| 03/06 | 1,750.79 | ITC INFOTECH (US DIRECT DEP 7460521438027GP 030620 |

## Daily Balance Summary

| Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|
| 02/11 | 97,725.96 | 02/21 | 102,753.18 | 02/28 | 7,533.25 |
| 02/12 | 103,376.11 | 02/24 | 1,987.90 | 03/02 | 6,590.24 |
| 02/14 | 102,600.04 | 02/25 | 7,727.90 | 03/03 | 5,099.04 |
| 02/18 | 101,502.37 | 02/26 | 7,561.25 | 03/04 | 3,765.85 |
| 02/20 | 101,002.37 | 02/27 | 7,553.25 | 03/06 | 4,616.64 |

FILED DATE: 5/14/2021 3:14 PM   2021L004998

EXHIBIT B



**FIFTH THIRD BANK**

FILED DATE: 5/14/2021 3:14 PM   2021L004998

5050 Kingsley Drive
MD 1MOCOP
Cincinnati OH 45263


Leonard A Mcgee
8956 S Bishop Street
Chicago IL 60620

|  |  |
|---|---|
| Date: | March 11, 2021 |
| Account: | *****5223 |
| Account: | *****0293 |
| Account: | *****0457 |

### Regarding Your Unsecured FlexLine Accounts

Dear Leonard A Mcgee:


We received a copy of the complaint you filed with the Better Business Bureau regarding your Unsecured FlexLine accounts. We appreciate the time you have taken to document your thoughts and concerns regarding this matter.

On behalf of the Bank, please accept my sincere apologies for any inconvenience this matter may have caused you. Please be assured we have researched this matter fully, and passed on your concerns to the relevant parties within the Bank. I also want you to know that customer concerns are reviewed by our senior and executive management teams as part of our ongoing commitment to our customers' satisfaction.

We have thoroughly reviewed accounts ending in 5223, 0293, and 0457. Your accounts were permanently blocked April 20, 2020, I have enclosed a copy of the notice sent to you. The reasons for the decision detailed in the notice are as followed:

- Proportion of balances to credit limits is too high on bank revolving or other revolving accounts
- Time since most recent account opening is too short
- Length of time accounts have been established
- Number of bank or national revolving accounts with balances
- Too many inquiries last twelve (12) months

Additionally, we have enclosed the note for all three (3) accounts. Please refer to page two (2); section eighteen (18), and section twenty-six (26), regarding the re-evaluation of financial conditions and credit history. On behalf of the Bank, please accept my sincere apologies for any inconvenience this matter may have caused you. However, we are required to report accurate information and cannot honor you request to remove reporting, in cases where no bank error has occurred. If you would like to contact the credit reporting agencies directly, their contact information can be found below:

Fifth Third Bank, National Association. Member FDIC. ⌂ Equal Housing Lender. Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp.

FILED DATE: 5/14/2021 3:14 PM   2021L004998

- Equifax       800-685-1111
- Experian      888-397-3742
- TransUnion    800-916-8800
- Innovis       800-540-2505

Thank you for your patience while we researched this matter for you. If I could be of further assistance to you, please contact me directly at 513-358-0965, or toll free at 866-360-5353, Monday through Friday, 8 a.m. to 5 p.m., ET.

Sincerely,

Jennifer Murphy
Office of the President

Pc: Better Business Bureau

Enclosure: Letter Dated April 20, 2020 (3), Note (3)

2

16. **TERMINATION FEE:** Borrower may prepay the obligation under this Credit Agreement in full at any time prior to maturity without incurring a prepayment charge. Partial payments shall not excuse any subsequent payment due.

17. **DEFAULT:** You will be in default of this Agreement upon your failure to abide by any of the terms of this Agreement.

**EVENTS OF DEFAULT:** In addition, the Lender may terminate the plan and accelerate the balance if any of the following circumstances occur:
a) There has been fraud or material misrepresentation by you in connection with this Account.
b) You fail to meet the repayment terms.
c) Your death.
d) You are an executive officer of Lender or Lender's affiliate and federal law permits or requires immediate payment of the Account.

18. The Lender may prohibit additional extensions of credit or reduce the credit limit if any of the following circumstances occur:
a) The Lender reasonably believes that you will be unable to fulfill the repayment obligations under the Account due to a material change in your financial circumstances.
b) Your are in default of any material obligations under the Agreement.
c) Action by a governmental body precludes the Lender from imposing the agreed upon ANNUAL PERCENTAGE RATE.
d) During any period in which the ANNUAL PERCENTAGE RATE corresponding to the periodic rate reaches the maximum rate allowed under the plan.
e) When a regulatory agency with responsibility for supervising the Lender provides notification that continuing to advance funds may constitute an unsafe and unsound practice.
f) When any of you file any form of bankruptcy.

Lender may reinstate your credit privileges when the circumstances leading to their suspension are cured to Lender's satisfaction. Lender may require you to request reinstatement of your credit privileges when the circumstances leading to the suspension of credit extension or reduction of your credit limit no longer exist. You authorize Lender to obtain such information as may be required by Lender, including credit reports, to evaluate your request to reinstate your credit privileges and you agree to pay the cost of obtaining such information to the extent permitted by law.

19. Unless prohibited by law, Borrower shall pay all expenses, including attorneys' fees, reasonably incurred by the Lender with respect to collection of the indebtedness evidenced hereby or enforcement of the Lender's rights hereunder (including foreclosure, suit for a deficiency judgment or other litigation expenses and also including such costs and attorneys' fees as may be incurred on appeal), arising out of any default by Borrower. Any provision permitting lender to collect attorney's fees incurred to collect on this account is void if the contract is governed by the law of West Virginia.

20. You should consult a tax advisor regarding the deductibility of interest and charges on Account.

21. All persons signing this Agreement shall be obligated on the Account and shall be jointly and severally liable for all amounts due and owing on the Account. You hereby authorize Lender to pay any request for advance unless any one of you specifically instructs Lender otherwise in writing.

22. As used herein, the singular shall include the plural and the plural shall include the singular.

23. To secure your Line of Credit, you are giving Lender a security interest in all of your deposit accounts with Lender, its affiliates and subsidiaries if allowed by Law. Any such security interest is provided solely as a source to offset the balance of the Account if an event of default occurs under the terms of this Line of Credit Agreement.

24. To the extent permitted, this Agreement and the amounts contracted for, including the FINANCE CHARGE, shall be governed by, and construed and interpreted in accordance with, the laws of the State of Ohio, without regard to its conflict of laws principles, and applicable federal laws and regulations, and the obligations, rights and remedies of the parties shall be determined in accordance with such laws.

25. You hereby acknowledge that prior to signing this Agreement, you have received and read the Federal Truth-in-Lending Disclosure Statement for this Account contained herein.

26. **Re-evaluation of Financial Condition and Credit History.** We may reevaluate your financial condition and investigate any information you provided on your Account application at any time. In the course of doing so, we may obtain a current credit report and ask you for additional information about your financial condition by completing a Personal Financial Statement or such other form that we request from time to time. You give us your permission to obtain any information about you that we believe would be beneficial to facilitate our determination of your eligibility for and ability to pay on the Account, including credit reports from consumer reporting agencies and direct deposit history in accounts maintained with Lender or its affiliates. We may, as a result of any such re-evaluation, (i) increase your credit line, (ii) decrease your credit line; or (iii) deem your Account to be in default.

27. **Line Increases.** We can increase your credit line at any time. Any such line increase will generally be effective immediately unless we are required by Applicable Law to provide you with advance written notice of the proposed change. If advance notice is required, the change will be effective immediately following the effective date stated in the notice. If we give you the right to reject a line increase (whether because it is required by Applicable Law or otherwise), and you do not reject the change according to the procedure set forth in the notice by the effective date stated in a notice regarding the change, you will be deemed to accept all changes in the notice.

Borrower acknowledges receipt of a completed copy of this agreement at the time of signing.

DATE : 05/02/18 _____  _____  _____

ACCEPTED: FIFTH THIRD BANK

_East Loop BC_
(Name of Lender)

By _Nathan Paulson_

_____   Borrower

_____   Borrower

COPY1 - LENDER      COPY2 - CUSTOMER

IL    OHC1 01/17

FILED DATE: 5/14/2021 3:14 PM    2021L004998

# FIFTH THIRD BANK
## LINE OF CREDIT AGREEMENT AND FEDERAL TRUTH IN LENDING INITIAL DISCLOSURE

LEONARD A. MCGEE

NAME                    BORROWER            ACCOUNT NUMBER    5223

NAME                    BORROWER

In consideration of the agreement by **FIFTH THIRD BANK** (hereinafter referred to as the "Lender") to open a Line of Credit Account ("Account") in the amount of
$ **10,800.00** whereby you (includes all borrowers jointly and severally) may receive periodic extensions of credit (loan advances) by writing a check **(NAME OF LENDER)**
or using any other method of access we offer to draw an extension of credit on said Account from the date of this agreement until May 25, 2023 (the
"Revolving Period"), you hereby agree as follows:

## FINANCE CHARGE
1. When you desire an extension of credit hereunder, you will use an Account check or other method of access offered by the Lender, or transfer funds from the Account by other means acceptable to Lender. The amount of the advance will be no greater than the amount of credit available on your Account at that time. Upon Lender's request, you will surrender any Account checks or other access device in your possession.

2. All extensions of credit drawn on your Account, plus other charges and fees, insurance premiums, if applicable, and interest will be debited to your Account. You agree to pay back all such amounts as specified in the paragraph titled Term and Payment Requirements.

3. You will promptly notify Lender in writing of any change of address, billing errors appearing on your periodic statement and of any loss or unauthorized use of your Account checks or other method of access we offer. Upon request of Lender, usually once a year, you agree to provide information on your current financial condition by completing a personal financial statement.

4. All payments will be credited promptly and in no event more than five days after receipt by Lender. Payments received prior to 5:00 p.m. on a business day at the address printed on the payment coupon portion of your statement will be credited to the account on that business day.

5. Lender reserves the right to refuse to honor any request for advance drawn on your Account which does not conform to the requirements of this Agreement. Lender may also refuse to honor a request for advance drawn on your Account if to do so would cause the balance of your Account, according to Lender records, to exceed your credit limit in effect at that time. However, Lender at its discretion may honor such check or card advance, despite the fact it would cause your Account balance to exceed your credit limit. Lender may, at its discretion, withhold a portion of the available credit on your Account up to the amount of any payment made in order to assure that your check or other payment instrument is honored.

6. A FINANCE CHARGE will be imposed from the date of posting of each advance on the daily balance of the Account until payment in full is entered to your Account.

7. We calculate the FINANCE CHARGE on your Account by applying the ANNUAL PERCENTAGE RATE, figured on a daily basis, times the daily balance of your Account. To get the daily beginning balance of your Account each day, add new advances, and subtract any payments or credits and unpaid finance charges. The FINANCE CHARGE during each billing cycle will be the sum of the daily FINANCE CHARGES so calculated. The ANNUAL PERCENTAGE RATE corresponding to the periodic rate does not include any costs other than interest.

8. The ANNUAL PERCENTAGE RATE on your Account will be the highest Prime Rate as published in the Eastern Edition of The Wall Street Journal "Money Rates" table, plus 6.740 . Changes in the ANNUAL PERCENTAGE RATE will be effective on the first business day of the month following the day a change in Prime Rate is published in The Wall Street Journal. The ANNUAL PERCENTAGE RATE is subject to a lifetime floor and will never fall below 2.740%. The maximum interest rate will not exceed 25% per annum or the highest rate allowed by law, whichever is less. The new rate will be reflected on your periodic statements. An increase in the index may result in an increase in your minimum monthly payment and your principal balance.

9. INITIAL ACCOUNT RATE: The current ANNUAL PERCENTAGE RATE for this account is 11.490 %. The corresponding daily periodic rate is +0.031 %.

## PAYMENTS AND FEES

10. TERM AND PAYMENT REQUIREMENTS. You may obtain loan advances during the Revolving Period. During the Revolving Period your payment will be due monthly. You must pay at least the Minimum Amount Due shown on your Account Statement on a monthly basis. During the Revolving Period, if the balance on the Account is $35.00 or greater, the Minimum Amount Due for any portion of the balance not subject to a fixed rate lock will be the greater of the following with respect to any unlocked balances: (a) 1% of the outstanding principal borrowed plus the finance charge plus any outstanding fees; or (b) $35.00. If the balance on the Account is less than $35.00, the Minimum Amount Due will be the full balance on the Account. If you have locked the interest rate on any portion of your line, the Minimum Amount Due will also include the monthly installment due on the locked portion.

After the Revolving Period ends, you will no longer be able to obtain loan advances and you must repay all outstanding amounts by May 25, 2033 (the "Maturity Date"). The period between the end of the Revolving Period and the Maturity Date is the Repayment Period. During the Repayment Period, if the balance on the Account is $35.00 or greater, the Minimum Amount Due each month will be the greater of the following with respect to any unlocked balances: (a) the Account balance at the end of the preceding billing period, minus previously billed and unpaid principal, divided by the number of payments remaining in the Repayment Period (initially 120), plus the finance charges that accrued during the preceding billing period; or (b) $35.00. If the balance on the Account is less than $35.00, the Minimum Amount Due will be the full balance on the Account. If you have locked the interest rate on any portion of your line, the Minimum Amount Due will also include the monthly installment due on the locked portion. You will be required to pay the entire balance due, if any, on the Maturity Date. You may apply to refinance the balance with Lender.

11. PAYMENT APPLICATION: We may apply payments in any order permitted under applicable law.

12. IRREGULAR PAYMENTS: Lender can accept late payments or partial payments, or checks or money orders marked "payment in full" or language to the same effect, without losing any rights under this agreement.

13. ANNUAL CHARGE: An annual charge of $35 may be assessed at the time the Account is opened, and on that day each year thereafter during the Revolving Period, for use of the Account and associated services. This fee is non-refundable.

14. RETURNED CHECKS AND STOP PAYMENTS: If a payment check is returned for any reason, Lender may charge your Account a fee of $35 . If you request that Lender stop payment on your check, Lender may charge your Account a fee of $25.00.

15. LATE CHARGE: If the minimum payment due is not received within 10 days after the due date, Lender may levy a late charge per month of 10% of the payment amount with a minimum of $35.00. If so incurred, each fee will be identified as a separate loan transaction on the next billing statement.

1L    OHCA (01/17)

FILED DATE: 5/14/2021 3:14 PM    2021L004998

FILED DATE: 5/14/2021 3:14 PM   2021L004998

16. **TERMINATION FEE:** Borrower may prepay the obligation under this Credit Agreement in full at any time prior to maturity without incurring a prepayment charge. Partial payments shall not excuse any subsequent payment due.

17. **DEFAULT:** You will be in default of this Agreement upon your failure to abide by any of the terms of this Agreement.

**EVENTS OF DEFAULT:** In addition, the Lender may terminate the plan and accelerate the balance if any of the following circumstances occur:
a) There has been fraud or material misrepresentation by you in connection with this Account.
b) You fail to meet the repayment terms.
c) Your death.
d) You are an executive officer of Lender or Lender's affiliate and federal law permits or requires immediate payment of the Account.

18. The Lender may prohibit additional extensions of credit or reduce the credit limit if any of the following circumstances occur:
a) The Lender reasonably believes that you will be unable to fulfill the repayment obligations under the Account due to a material change in your financial circumstances.
b) You are in default of any material obligations under the Agreement.
c) Action by a governmental body precludes the Lender from imposing the agreed upon ANNUAL PERCENTAGE RATE.
d) During any period in which the ANNUAL PERCENTAGE RATE corresponding to the periodic rate reaches the maximum rate allowed under the plan.
e) When a regulatory agency with responsibility for supervising the Lender provides notification that continuing to advance funds may constitute an unsafe or unsound practice.
f) When any of you file any form of bankruptcy.

Lender may reinstate your credit privileges when the circumstances leading to their suspension are cured to Lender's satisfaction. Lender may require you to request reinstatement of your credit privileges when the circumstances leading to the suspension of credit extension or reduction of your credit limit no longer exist. You authorize Lender to obtain such information as may be required by Lender, including credit reports, to evaluate your request to reinstate your credit privileges and you agree to pay the cost of obtaining such information to the extent permitted by law.

19. Unless prohibited by law, Borrower shall pay all expenses, including attorneys' fees, reasonably incurred by the Lender with respect to collection of the indebtedness evidenced hereby or enforcement of the Lender's rights hereunder (including foreclosure, suit for a deficiency judgment or other litigation expenses and also including such costs and attorneys' fees as may be incurred on appeal), arising out of any default by Borrower. Any provision permitting lender to collect attorney's fees incurred to collect on this account is void if the contract is governed by the law of West Virginia.

20. You should consult a tax advisor regarding the deductibility of interest and charges on Account.

21. All persons signing this Agreement shall be obligated on the Account and shall be jointly and severally liable for all amounts due and owing on the Account. You hereby authorize Lender to pay any request for advance unless any one of you specifically instructs Lender otherwise in writing.

22. As used herein, the singular shall include the plural and the plural include the singular.

23. To secure your Line of Credit, you are giving Lender a security interest in all of your deposit accounts with Lender, its affiliates and subsidiaries if allowed by Law. Any such security interest is provided solely as a source to offset the balance of the Account if an event of default occurs under the terms of this Line of Credit Agreement.

24. To the extent permitted, this Agreement and the amounts contracted for, including the FINANCE CHARGE, shall be governed by, and construed and interpreted in accordance with, the laws of the State of Ohio, without regard to its conflict of laws principles, and applicable federal laws and regulations, and the obligations, rights and remedies of the parties shall be determined in accordance with such laws.

25. You hereby acknowledge that prior to signing this Agreement, you have received and read the Federal Truth-in-Lending Disclosure Statement for this Account contained herein.

26. **Re-evaluation of Financial Condition and Credit History.** We may reevaluate your financial condition and investigate any information you provided on your Account application at any time. In the course of doing so, we may obtain a current credit report and ask you for additional information about your financial condition by completing a Personal Financial Statement or such other form that we request from time to time. You give us your permission to obtain any information about you that we believe would be beneficial to facilitate our determination of your eligibility for and ability to pay on the Account, including credit reports from consumer reporting agencies and direct deposit history in accounts maintained with Lender or its affiliates. We may, as a result of any such re-evaluation, (i) increase your credit line, (ii) decrease your credit line; or (iii) deem your Account to be in default.

27. **Line Increases.** We can increase your credit line at any time. Any such line increase will generally be effective immediately unless we are required by Applicable Law to provide you with advance written notice of the proposed change. If advance notice is required, the change will be effective immediately following the effective date stated in the notice. If we give you the right to reject a line increase (whether because it is required by Applicable Law or otherwise), and you do not reject the change according to the procedure set forth in the notice by the effective date stated in a notice regarding the change, you will be deemed to accept all changes in the notice.

Borrower acknowledges receipt of a completed copy of this agreement at the time of signing.

DATE : 11/09/18

ACCEPTED: FIFTH THIRD BANK

*East Loop BC*
(Name of Lender)

By

Borrower

Borrower

FILED DATE: 5/14/2021 3:14 PM    2021L004998

**FIFTH THIRD BANK**
## LINE OF CREDIT AGREEMENT AND FEDERAL TRUTH IN LENDING INITIAL DISCLOSURE

LEONARD A. MCGEE ▓▓▓▓▓20293
NAME                                    BORROWER          ACCOUNT NUMBER

NAME                                    BORROWER

In consideration of the agreement by  **FIFTH THIRD BANK**      (hereinafter referred to as the "Lender") to open a Line of Credit Account ("Account") in the amount of
                                       **(NAME OF LENDER)**
$ __18,600.00__                whereby you (includes all borrowers jointly and severally) may receive periodic extensions of credit (loan advances) by writing a check or using any other method of access we offer to draw an extension of credit on said Account from the date of this agreement until November 25, 2023      (the "Revolving Period"), you hereby agree as follows:

**FINANCE CHARGE**

1. When you desire an extension of credit hereunder, you will use an Account check or other method of access offered by the Lender, or transfer funds from the Account by other means acceptable to Lender. The amount of the advance will be no greater than the amount of credit available on your Account at that time. Upon Lender's request, you will surrender any Account checks or other access device in your possession.

2. All extensions of credit drawn on your Account, plus other charges and fees, insurance premiums, if applicable, and interest will be debited to your Account. You agree to pay back all such amounts as specified in the paragraph titled Term and Payment Requirements.

3. You will promptly notify Lender in writing of any change of address, billing errors appearing on your periodic statement and of any loss or unauthorized use of your Account checks or other method of access we offer. Upon request of Lender, usually once a year, you agree to provide information on your current financial condition by completing a personal financial statement.

4. All payments will be credited promptly and in no event more than five days after receipt by Lender. Payments received prior to 5:00 p.m. on a business day at the address printed on the payment coupon portion of your statement will be credited to the account on that business day.

5. Lender reserves the right to refuse to honor any request for advance drawn on your Account which does not conform to the requirements of this Agreement. Lender may also refuse to honor a request for advance drawn on your Account if to do so would cause the balance of your Account, according to Lender records, to exceed your credit limit in effect at that time. However, Lender at its discretion may honor such check or card advance, despite the fact it would cause your Account balance to exceed your credit limit. Lender may, at its discretion, withhold a portion of the available credit on your Account up to the amount of any payment made in order to assure that your check or other payment instrument is honored.

6. A FINANCE CHARGE will be imposed from the date of posting of each advance on the daily balance of the Account until payment in full is entered to your Account.

7. We calculate the FINANCE CHARGE on your Account by applying the ANNUAL PERCENTAGE RATE, figured on a daily basis, times the daily balance of your Account. To get the daily beginning balance of your Account each day, add new advances, and subtract any payments or credits and unpaid finance charges. The FINANCE CHARGE during each billing cycle will be the sum of the daily FINANCE CHARGES so calculated. The ANNUAL PERCENTAGE RATE corresponding to the periodic rate does not include any costs other than interest.

8. The ANNUAL PERCENTAGE RATE on your Account will be the highest Prime Rate as published in the Eastern Edition of The Wall Street Journal "Money Rates" table, plus 5.240   . Changes in the ANNUAL PERCENTAGE RATE will be effective on the first business day of the month following the day a change in Prime Rate is published in The Wall Street Journal. The ANNUAL PERCENTAGE RATE is subject to a lifetime floor and will never fall below 2.740%. The maximum interest rate will not exceed 25%   per annum or the highest rate allowed by law, whichever is less. The new rate will be reflected on your periodic statements. An increase in the index may result in an increase to your minimum monthly payment and your principal balance.

9. INITIAL ACCOUNT RATE: The current ANNUAL PERCENTAGE RATE for this account is 10.490 %. The corresponding daily periodic rate is +0.028 %.

**PAYMENTS AND FEES**

10. TERM AND PAYMENT REQUIREMENTS. You may obtain loan advances during the Revolving Period. During the Revolving Period your payment will be due monthly. You must pay at least the Minimum Amount Due shown on your Account Statement on a monthly basis. During the Revolving Period, if the balance on the Account is $35.00 or greater, the Minimum Amount Due for any portion of the balance not subject to a fixed rate lock will be the greater of the following with respect to any unlocked balances: (a) 1% of the outstanding principal borrowed plus the finance charge plus any outstanding fees; or (b) $35.00. If the balance on the Account is less than $35.00, the Minimum Amount Due will be the full balance on the Account. If you have locked the interest rate on any portion of your line, the Minimum Amount Due will also include the monthly installment due on the locked portion.

After the Revolving Period ends, you will no longer be able to obtain loan advances and you must repay all outstanding amounts by November 25, 2033 (the "Maturity Date"). The period between the end of the Revolving Period and the Maturity Date is the Repayment Period. During the Repayment Period, if the balance on the Account is $35.00 or greater, the Minimum Amount Due each month will be the greater of the following with respect to any unlocked balances: (a) the Account balance at the end of the preceding billing period, minus previously billed and unpaid principal, divided by the number of payments remaining in the Repayment Period (initially 120), plus the finance charges that accrued during the preceding billing period; or (b) $35.00. If the balance on the Account is less than $35.00, the Minimum Amount Due will be the full balance on the Account. If you have locked the interest rate on any portion of your line, the Minimum Amount Due will also include the monthly installment due on the locked portion. You will be required to pay the entire balance due, if any, on the Maturity Date. You may apply to refinance the balance with Lender.

11. PAYMENT APPLICATION: We may apply payments in any order permitted under applicable law.

12. IRREGULAR PAYMENTS: Lender can accept late payments or partial payments, or checks or money orders marked "payment in full" or language to the same effect, without losing any rights under this agreement.

13. ANNUAL CHARGE: An annual charge of  $35   may be assessed at the time the Account is opened, and on that day each year thereafter during the Revolving Period, for use of the Account and associated services. This fee is non-refundable.

14. RETURNED CHECKS AND STOP PAYMENTS: If a payment check is returned for any reason, Lender may charge your Account a fee of  $35  . If you request that Lender stop payment on your check, Lender may charge your Account a fee of $25.00.

15. LATE CHARGE: If the minimum payment due is not received within 10 days after the due date, Lender may levy a late charge per month of 10% of the payment amount with a minimum of $35.00. If so incurred, each fee will be identified as a separate loan transaction on the next billing statement.

                                                                          IL    OHCA (01/17)

FILED DATE: 5/14/2021 3:14 PM    2021L004998

**16. TERMINATION FEE:** Borrower may prepay the obligation under this Credit Agreement in full at any time prior to maturity without incurring a prepayment charge. Partial payments shall not excuse any subsequent payment due.

**17. DEFAULT:** You will be in default of this Agreement upon your failure to abide by any of the terms of this Agreement.

**EVENTS OF DEFAULT:** In addition, the Lender may terminate the plan and accelerate the balance if any of the following circumstances occur:
a) There has been fraud or material misrepresentation by you in connection with this Account.
b) You fail to meet the repayment terms.
c) Your death.
d) You are an executive officer of Lender or Lender's affiliate and federal law permits or requires immediate payment of the Account.

**18. The Lender may prohibit additional extensions of credit or reduce the credit limit if any of the following circumstances occur:**
a) The Lender reasonably believes that you will be unable to fulfill the repayment obligations under the Account due to a material change in your financial circumstances.
b) You are in default of any material obligations under the Agreement.
c) Action by a governmental body precludes the Lender from imposing the agreed upon ANNUAL PERCENTAGE RATE.
d) During any period in which the ANNUAL PERCENTAGE RATE corresponding to the periodic rate reaches the maximum rate allowed under the plan.
e) When a regulatory agency with responsibility for supervising the Lender provides notification that continuing to advance funds may constitute an unsafe and unsound practice.
f) When any of you file any form of bankruptcy.

Lender may reinstate your credit privileges when the circumstances leading to their suspension are cured to Lender's satisfaction. Lender may require you to request reinstatement of your credit privileges when the circumstances leading to the suspension of credit extension or reduction of your credit limit no longer exist. You authorize Lender to obtain such information as may be required by Lender, including credit reports, to evaluate your request to reinstate your credit privileges and you agree to pay the cost of obtaining such information to the extent permitted by law.

**19.** Unless prohibited by law, Borrower shall pay all expenses, including attorneys' fees, reasonably incurred by the Lender with respect to collection of the indebtedness evidenced hereby or enforcement of the Lender's rights hereunder (including foreclosure, suit for a deficiency judgment or other litigation expenses and also including such costs and attorneys' fees as may be incurred on appeal), arising out of any default by Borrower. Any provision permitting lender to collect attorney's fees incurred to collect on this account is void if the contract is governed by the law of West Virginia.

**20.** You should consult a tax advisor regarding the deductibility of interest and charges on Account.

**21.** All persons signing this Agreement shall be obligated on the Account and shall be jointly and severally liable for all amounts due and owing on the Account. You hereby authorize Lender to pay any request for advance unless any one of you specifically instructs Lender otherwise in writing.

**22.** As used herein, the singular shall include the plural and the plural shall include the singular.

**23.** To secure your Line of Credit, you are giving Lender a security interest in all of your deposit accounts with Lender, its affiliates and subsidiaries if allowed by Law. Any such security interest is provided solely as a source to offset the balance of the Account if an event of default occurs under the terms of this Line of Credit Agreement.

**24.** To the extent permitted, this Agreement and the amounts contracted for, including the FINANCE CHARGE, shall be governed by, and construed and interpreted in accordance with, the laws of the State of Ohio, without regard to its conflict of laws principles, and applicable federal laws and regulations, and the obligations, rights and remedies of the parties shall be determined in accordance with such laws.

**25.** You hereby acknowledge that prior to signing this Agreement, you have received and read the Federal Truth-in-Lending Disclosure Statement for this Account contained herein.

**26. Re-evaluation of Financial Condition and Credit History.** We may reevaluate your financial condition and investigate any information you provided on your Account application at any time. In the course of doing so, we may obtain a current credit report and ask you for additional information about your financial condition by completing a Personal Financial Statement or such other form that we request from time to time. You give us your permission to obtain any information about you that we believe would be beneficial to facilitate our determination of your eligibility for and ability to pay on the Account, including credit reports from consumer reporting agencies and direct deposit history in accounts maintained with Lender or its affiliates. We may, as a result of any such re-evaluation, (i) increase your credit line, (ii) decrease your credit line; or (iii) deem your Account to be in default.

**27. Line Increases.** We can increase your credit line at any time. Any such line increase will generally be effective immediately unless we are required by Applicable Law to provide you with advance written notice of the proposed change. If advance notice is required, the change will be effective immediately following the effective date stated in the notice. If we give you the right to reject a line increase (whether because it is required by Applicable Law or otherwise), and you do not reject the change according to the procedure set forth in the notice by the effective date stated in a notice regarding the change, you will be deemed to accept all changes in the notice.

Borrower acknowledges receipt of a completed copy of this agreement at the time of signing.

DATE : 11/09/18

ACCEPTED: FIFTH THIRD BANK

*East Loop BC*
(Name of Lender)

By _____

_____
Borrower

_____
Borrower

# FIFTH THIRD BANK
## LINE OF CREDIT AGREEMENT AND FEDERAL TRUTH IN LENDING INITIAL DISCLOSURE

FILED DATE: 5/14/2021 3:14 PM    2021L004998

LEONARD A. MOORE

NAME                   BORROWER       ACCOUNT NUMBER       0457

NAME                   BORROWER

In consideration of the agreement by **FIFTH THIRD BANK** (hereinafter referred to as the "Lender") to open a Line of Credit Account ("Account") in the amount of
(NAME OF LENDER)
$ 18,600.00 whereby you (includes all borrowers jointly and severally) may receive periodic extensions of credit (loan advances) by writing a check or using any other method of access we offer to draw an extension of credit on said Account from the date of this agreement until November 25, 2023 (the "Revolving Period"), you hereby agree as follows:

## FINANCE CHARGE

1. When you desire an extension of credit hereunder, you will use an Account check or other method of access offered by the Lender, or transfer funds from the Account by other means acceptable to Lender. The amount of the advance will be no greater than the amount of credit available on your Account at that time. Upon Lender's request, you will surrender any Account checks or other access device in your possession.

2. All extensions of credit drawn on your Account, plus other charges and fees, insurance premiums, if applicable, and interest will be debited to your Account. You agree to pay back all such amounts as specified in the paragraph titled Term and Payment Requirements.

3. You will promptly notify Lender in writing of any change of address, billing errors appearing on your periodic statement and of any loss or unauthorized use of your Account checks or other method of access we offer. Upon request of Lender, usually once a year, you agree to provide information on your current financial condition by completing a personal financial statement.

4. All payments will be credited promptly and in no event more than five days after receipt by Lender. Payments received prior to 5:00 p.m. on a business day at the address printed on the payment coupon portion of your statement will be credited to the account on that business day.

5. Lender reserves the right to refuse to honor any request for advance drawn on your Account which does not conform to the requirements of this Agreement. Lender may also refuse to honor a request for advance drawn on your Account if to do so would cause the balance of your Account, according to Lender records, to exceed your credit limit in effect at that time. However, Lender at its discretion may honor such check or card advance, despite the fact it would cause your Account balance to exceed your credit limit. Lender may, at its discretion, withhold a portion of the available credit on your Account up to the amount of any payment made in order to assure that your check or other payment instrument is honored.

6. A FINANCE CHARGE will be imposed from the date of posting of each advance on the daily balance of the Account until payment in full is entered to your Account.

7. We calculate the FINANCE CHARGE on your Account by applying the ANNUAL PERCENTAGE RATE, figured on a daily basis, times the daily balance of your Account. To get the daily beginning balance of your Account each day, add new advances, and subtract any payments or credits and unpaid finance charges. The FINANCE CHARGE during each billing cycle will be the sum of the daily FINANCE CHARGES so calculated. The ANNUAL PERCENTAGE RATE corresponding to the periodic rate does not include any costs other than interest.

8. The ANNUAL PERCENTAGE RATE on your Account will be the highest Prime Rate as published in the Eastern Edition of The Wall Street Journal "Money Rates" table, plus 5.240 . Changes in the ANNUAL PERCENTAGE RATE will be effective on the first business day of the month following the day a change in Prime Rate is published in The Wall Street Journal. The ANNUAL PERCENTAGE RATE is subject to a lifetime floor and will never fall below 2.740%. The maximum interest rate will not exceed 25% per annum or the highest rate allowed by law, whichever is less. The new rate will be reflected on your periodic statements. An increase in the index may result in an increase in your minimum monthly payment and your principal balance.

9. INITIAL ACCOUNT RATE: The current ANNUAL PERCENTAGE RATE for this account is 10.490 %. The corresponding daily periodic rate is +0.028 %.

## PAYMENTS AND FEES

10. TERM AND PAYMENT REQUIREMENTS. You may obtain loan advances during the Revolving Period. During the Revolving Period your payment will be due monthly. You must pay at least the Minimum Amount Due shown on your Account Statement on a monthly basis. During the Revolving Period, if the balance on the Account is $35.00 or greater, the Minimum Amount Due for any portion of the balance not subject to a fixed rate lock will be the greater of the following with respect to any unlocked balances: (a) 1% of the outstanding principal borrowed plus the finance charge plus any outstanding fees; or (b) $35.00. If the balance on the Account is less than $35.00, the Minimum Amount Due will be the full balance on the Account. If you have locked the interest rate on any portion of your line, the Minimum Amount Due will also include the monthly installment due on the locked portion.

After the Revolving Period ends, you will no longer be able to obtain loan advances and you must repay all outstanding amounts by November 25, 2033 (the "Maturity Date"). The period between the end of the Revolving Period and the Maturity Date is the Repayment Period. During the Repayment Period, if the balance on the Account is $35.00 or greater, the Minimum Amount Due each month will be the greater of the following with respect to any unlocked balances: (a) the Account balance at the end of the preceding billing period, minus previously billed and unpaid principal, divided by the number of payments remaining in the Repayment Period (initially 120), plus the finance charges that accrued during the preceding billing period; or (b) $35.00. If the balance on the Account is less than $35.00, the Minimum Amount Due will be the full balance on the Account. If you have locked the interest rate on any portion of your line, the Minimum Amount Due will also include the monthly installment due on the locked portion. You will be required to pay the entire balance due, if any, on the Maturity Date. You may apply to refinance the balance with Lender.

11. PAYMENT APPLICATION: We may apply payments in any order permitted under applicable law.

12. IRREGULAR PAYMENTS: Lender can accept late payments or partial payments, or checks or money orders marked "payment in full" or language to the same effect, without losing any rights under this agreement.

13. ANNUAL CHARGE: An annual charge of $35 may be assessed at the time the Account is opened, and on that day each year thereafter during the Revolving Period, for use of the Account and associated services. This fee is non-refundable.

14. RETURNED CHECKS AND STOP PAYMENTS: If a payment check is returned for any reason, Lender may charge your Account a fee of $35 . If you request that Lender stop payment on your check, Lender may charge your Account a fee of $25.00.

15. LATE CHARGE: If the minimum payment due is not received within 10 days after the due date, Lender may levy a late charge per month of 10% of the payment amount with a minimum of $35.00. If so incurred, each fee will be identified as a separate loan transaction on the next billing statement.

IL      OHCA (01/17)

16. TERMINATION FEE: Borrower may prepay the obligation under this Credit Agreement in full at any time prior to maturity without incurring a prepayment charge. Partial payments shall not excuse any subsequent payment due.

17. DEFAULT: You will be in default of this Agreement upon your failure to abide by any of the terms of this Agreement.

EVENTS OF DEFAULT: In addition, the Lender may terminate the plan and accelerate the balance if any of the following circumstances occur:
   a)   There has been fraud or material misrepresentation by you in connection with this Account.
   b)   You fail to meet the repayment terms.
   c)   Your death.
   d)   You are an executive officer of Lender or Lender's affiliate and federal law permits or requires immediate payment of the Account.

18. The Lender may prohibit additional extensions of credit or reduce the credit limit if any of the following circumstances occur:
   a)   The Lender reasonably believes that you will be unable to fulfill the repayment obligations under the Account due to a material change in your financial circumstances.
   b)   You are in default of any material obligations under the Agreement.
   c)   Action by a governmental body precludes the Lender from imposing the agreed upon ANNUAL PERCENTAGE RATE.
   d)   During any period in which the ANNUAL PERCENTAGE RATE corresponding to the periodic rate reaches the maximum rate allowed under the plan.
   e)   When a regulatory agency with responsibility for supervising the Lender provides notification that continuing to advance funds may constitute an unsafe and unsound practice.
   f)   When any of you file any form of bankruptcy.

Lender may reinstate your credit privileges when the circumstances leading to their suspension are cured to Lender's satisfaction. Lender may require you to request reinstatement of your credit privileges when the circumstances leading to the suspension of credit extension or reduction of your credit limit no longer exist. You authorize Lender to obtain such information as may be required by Lender, including credit reports, to evaluate your request to reinstate your credit privileges and you agree to pay the cost of obtaining such information to the extent permitted by law.

19. Unless prohibited by law, Borrower shall pay all expenses, including attorneys' fees, reasonably incurred by the Lender with respect to collection of the indebtedness evidenced hereby or enforcement of the Lender's rights hereunder (including foreclosure, suit for a deficiency judgment or other litigation expenses and also including such costs and attorneys' fees as may be incurred on appeal), arising out of any default by Borrower. Any provision permitting lender to collect attorney's fees incurred to collect on this account is void if the contract is governed by the law of West Virginia.

20. You should consult a tax advisor regarding the deductibility of interest and charges on Account.

21. All persons signing this Agreement shall be obligated on the Account and shall be jointly and severally liable for all amounts due and owing on the Account. You hereby authorize Lender to pay any request for advance unless any one of you specifically instructs Lender otherwise in writing.

22. As used herein, the singular shall include the plural and the plural shall include the singular.

23. To secure your Line of Credit, you are giving Lender a security interest in all of your deposit accounts with Lender, its affiliates and subsidiaries if allowed by Law. Any such security interest is provided solely as a source to offset the balance of the Account if an event of default occurs under the terms of this Line of Credit Agreement.

24. To the extent permitted, this Agreement and the amounts contracted for, including the FINANCE CHARGE, shall be governed by, and construed and interpreted in accordance with, the laws of the State of Ohio, without regard to its conflict of laws principles, and applicable federal laws and regulations, and the obligations, rights and remedies of the parties shall be determined in accordance with such laws.

25. You hereby acknowledge that prior to signing this Agreement, you have received and read the Federal Truth-in-Lending Disclosure Statement for this Account contained herein.

26. Re-evaluation of Financial Condition and Credit History. We may reevaluate your financial condition and investigate any information you provided on your Account application at any time. In the course of doing so, we may obtain a current credit report and ask you for additional information about your financial condition by completing a Personal Financial Statement or such other form that we request from time to time. You give us your permission to obtain any information about you that we believe would be beneficial to facilitate our determination of your eligibility for and ability to pay on the Account, including credit reports from consumer reporting agencies and direct deposit history in accounts maintained with Lender or its affiliates. We may, as a result of any such re-evaluation, (i) increase your credit line, (ii) decrease your credit line; or (iii) deem your Account to be in default.

27. Line Increases. We can increase your credit line at any time. Any such line increase will generally be effective immediately unless we are required by Applicable Law to provide you with advance written notice of the proposed change. If advance notice is required, the change will be effective immediately following the effective date stated in the notice. If we give you the right to reject a line increase (whether because it is required by Applicable Law or otherwise), and you do not reject the change according to the procedure set forth in the notice by the effective date stated in a notice regarding the change, you will be deemed to accept all changes in the notice.

Borrower acknowledges receipt of a completed copy of this agreement at the time of signing.

DATE : 11/14/18

ACCEPTED:FIFTH THIRD BANK

*East Loop BC*
          (Name of Lender)

By _____
      Nathan Padson

Borrower

Borrower

FILED DATE: 5/14/2021 3:14 PM   2021L004998

FILED DATE: 5/14/2021 3:14 PM   2021L004998

**EXHIBIT C**

FILED DATE: 5/14/2021 3:14 PM    2021L004998



BBB Serving Southern Ohio, Northern Kentucky, Southeast Indiana
1 E. 4th, Suite 600
Cincinnati, OH 45202
Phone: (513) 421-3015
Fax: (513) 621-0907
info@cincinnati.bbb.org
bbb.org/cincinnati

3/24/2021

Leonard Mcgee
8956 S. Bishop St
Chicago IL 60620

Dear Leonard Mcgee,

**This message is regarding Complaint ID # 15236086- Fifth Third Bank**

Thank you for following up with BBB regarding your position in the above-mentioned dispute.

We understand you are NOT satisfied with the business's response. Your complaint is now closed stating your dissatisfaction and will remain in our files for 3 years. While we regret we were unable to reach your desired resolution, the business has provided BBB with its position. It will appear in the business's BBB Business Profile as "The business addressed the issues within the complaint, but the consumer either (a) did not accept the response, OR (b) did not notify BBB as to their satisfaction." We have forwarded your comments to the business and will advise you should they respond. Should you wish to pursue this matter further, you may want to contact your state Attorney General's Office and/or the Consumer Financial Protection Bureau (CFPB).

Please note, the text of your response may be publicly posted on BBB's website. BBB reserves the right to not post in accordance with BBB policy and we may edit your response to protect privacy rights and to remove inappropriate language.

We appreciate the opportunity to be of service and sincerely hope you will contact us for assistance in the future.

Sincerely,

Tina Geers
Senior Marketplace Resource Consultant Phone: 513-639-9127

FILED DATE: 5/14/2021 3:14 PM    2021L004998

Consumer Information

**Name:** Mr. Leonard A McGee

**Address:** 8956 S. Bishop St
Chicago, IL 60620

**Daytime Phone:** 773-595-0843

**Evening Phone:** 773-595-0843

**Fax:** *None Provided*

**Email:** Lmcgee1260@hotmail.com

Business Information

**Business Name:** Fifth Third Bank

**Address:** Cincinnati, OH 45202

**Phone:** (513) 579-5353

Complaint Details

Fifth Third breached our contracts for three Equity Lines of Credit, by permanently suspending my accounts without cause. Though the lines of credit were unsecured, the same rules of a home equity loan were in the contract. In addition to for all intents and purpose closing my accounts, FIfth Third placed three derogatory remarks on my credit reports with the three major credit bureaus. Several other credit began to treat me as a credit threat, upon the suspension of my lines of credit. They saw the notation "Credit Line Suspended" as a derogatory mark, and with no visible cause assumed it may be in some way related to bank fraud. I was able to explain the situation to some but not all of my other creditors. I informed them that Fifth Third had decided to no longer issue this product to new customer in mid 2019, but because the contract they were not allowed make unilateral changes. They instead used the fig leaf approach of suspension due to my annual credit review. I was informed months in advance that Fifth Third would attempt the close my lines of credit, by my personal banker at the company, and he encouraged me to withdraw the funds. Within two weeks the credit limit on my personal credit card was cut by 40% and after I called to complain about the cut all three of my Equity Lines of Credit were permanently suspended.

Desired Outcome/Settlement

**Desired Settlement:** Correction to a credit report

I want the notations removed so that I can apply for a commercial mortgage on my night club, at which time I can repay all of my personal debt, and lower my interest rate.

Complaint Details

**Nature of Complaint:** Contract Issues

**Date** 4/20/2020 12:00:00 AM

FILED DATE: 5/14/2021 3:14 PM    2021L004998

This message originally read on 4/10/2021
Better Business Bureau:

I have reviewed the response made by the business in reference to complaint ID 15236086, and have determined that this does not resolve my complaint. For your reference, details of the offer I reviewed appear below.

**[To assist us in bringing this matter to a close, we would like to know your view on the matter. Type your reasons here.]**
The response from Fifth Third is not acceptable to me for a number of reasons, and the main one is that they made no attempt to address the reason for my complaint. They basically admit that they breached the contract, and are at fought for negative consequences that I have had to face, but because of the broad leeway granted in the fine print of the contracts only a court of law can resolve this issue. In the span of less than six weeks all three of my Flex lines went form having a zero balance to being closed, but nearly a year later my credit card is still open. If the real reason for closing my Flex lines were the causes stated in their response, they would have taken action when they cut the limit on my credit card, the balance on the Flex Lines was ten times more than the balance on my credit card. It also stands to reason that if my credit had gotten bad enough to close my maxed out Flex lines, it was bad enough to close my credit card as well, in their third annual credit review in less than six months. Fifth Third also did not address the fact that it was an employee of their bank who advised me to draw down the money in my Flex lines, nor did they deny my claim that the closing of my Flex lines was premeditated. In the emails that I provided to Fifth Third in the course of this dispute, my personal banker explains to me that multiple company wide memos on this subject had been issued months before my Flex lines were closed. In the process of trying to get this problem solved at the local level, three different branch managers agreed with me that something abnormal had taken place, and escalated my concerns to the corporate office for an explanation. In my eyes there is nothing in the fine print of my contracts that would allow Fifth Third to place three derogatory notations on my credit reports without direct cause. Everyone I have spoken to about this matter agrees that there is no such thing as a good suspension on a credit report. So for Fifth Third to say this is an accurate description of my account status, and to refuse my request to change it after a year of on time payments is wrong on so many levels. Even if they had had the right to close my accounts, they had no right to do so in a manner they knew would cause a great hindrance to my access to capital. I was in the early stages of starting my own business, and had been making plans for over a year, when all of this took place. It was for that reason I was in regular contact with my personal banker, and was made aware of the possible closing of my accounts, and was able to act ahead of time. Now I am being punished in a way that seems to be petty, vindictive, and discriminatory economically, if not racially. It would not cost Fifth Third a dime to remove those remarks from my credit report, they have cost me in excess of $20,000, and put me on the verge of bankruptcy. What they have done and continue to do is just cruel, I have been a customer for seven years, and in that time built a relationship good enough to warrant nearly $60,000 in unsecured credit. I used those lines on a regular basis, and paid them all off more that ten times, so I have a right to take this grievance personally. Fifth Third put me in the position to start my own business, only to become reason my business is failing.


Regards,

Leonard Mcgee

## WHAT IS THE NEXT STEP?

This matter is now closed in BBB files, and will appear in the company's BBB Business Review as: "Answered - the business addressed the issues within the complaint, but the consumer remains dissatisfied."

There is no action for you to take at this time. We will contact you when we next require your input.

FILED DATE: 5/14/2021 3:14 PM    2021L004998

**EXHIBIT D**

Fifth Third Bank
5050 Kingsley Drive
MD 1MOB1N
Cincinnati OH 45263

264



FIFTH THIRD BANK

LEONARD A MCGEE
8956 S BISHOP ST
CHICAGO IL 60620

FILED DATE: 5/14/2021 3:14 PM    2021L004998

Date:      April 20, 2020
Account:   *******5223

### Urgent Notice Regarding Your Line of Credit

Dear LEONARD A MCGEE:

We are contacting you with a serious matter regarding your Fifth Third line of credit (above) and actions we have taken on your account.

**Based on a recent review of your account, we are permanently suspending your ability to access funds through your line of credit, effective immediately.** We have initiated this suspension in accordance with the agreement you signed when you obtained your Fifth Third line of credit. Our decision was based on the following:

- Proportion of balances to credit limits is too high on bank revolving or other revolving accounts
- Time since most recent account opening is too short
- Length of time accounts have been established
- Number of bank or national revolving accounts with balances

**What this means to you**
Not having access to funds from your line of credit will require some changes—and action—on your part. **Please be sure to address all of the points below that apply to your account.**

- If your line of credit is linked to a deposit account, such as a checking account, the line of credit will no longer provide overdraft protection for that account.

- If automatic deductions are made from a checking or savings account for monthly payments to your line of credit, these deductions will continue uninterrupted.

- If you use your line of credit to pay other bills automatically, please inform the payee(s) that payments will no longer be deducted from that account. Effective immediately, any automatic payments scheduled to be deducted from your line of credit will be declined.

- Any checks drawn on your suspended line of credit will be returned. If you wrote checks before you received this letter, please call us at 800-972-3030 to discuss handling these checks.

- You will continue to receive monthly account statements that include current payment information while you carry a balance on this account. We encourage you to continue to make payments to your line of credit account.

- If your balance is $0 and you would like to close this account, please contact us at 800-972-3030.

Fifth Third Bank, National Association. Member FDIC. ⌂ Equal Housing Lender. Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp.

**How we arrived at our decision**
Our decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. This reporting agency played no part in our decision and cannot provide specific reasons for our decision.

Under the Fair Credit Reporting Act:
- You have the right to know the information contained in your credit file at the consumer reporting agency.
- You are entitled to a free copy of your credit report if requested within 60 days after you receive this notice.
- If you feel any of the information in the report you receive is inaccurate or incomplete, you have the right to dispute it directly with the reporting agency below.

> Equifax Credit Information Services
> P.O. Box 740241
> Atlanta GA 30374-0241
> Phone: 800-685-1111

**Information about your credit score**
We also obtained your credit score from the consumer reporting agency and used it in making our decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change depending on how the information in your consumer report changes.

- Your credit score as of April 6, 2020 is 626.
- Scores range from a low of 300 to a high of 850.
- Key factors that adversely affected your credit score:
  - Proportion of balances to credit limits is too high on bank revolving or other revolving accounts
  - Time since most recent account opening is too short
  - Length of time accounts have been established
  - Number of bank or national revolving accounts with balances
  - Too many inquiries last 12 months

If you have any questions regarding your credit score, you should contact the reporting agency listed below.

> Equifax Credit Information Services
> P.O. Box 740241
> Atlanta GA 30374-0241
> Phone: 800-685-1111

**How to reach us**
If you have questions, please contact us at 800-972-3030, Monday through Friday, 7 a.m. to 8 p.m., ET.

Thank you.

Sincerely,

P. Brian Moore
Senior Vice President

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20006.

BANKRUPTCY NOTICE: To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this letter is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, Creditor retains rights under its security instrument, including the right to foreclose its lien. Any negotiations or arrangements entered into do not constitute a waiver of your discharge, an attempt to collect against you personally or an attempt to revive your personal liability for the debt.

Fifth Third Bank
5050 Kingsley Drive
MD 1MOB1N
Cincinnati OH 45263

392

LEONARD A MCGEE
8956 S BISHOP ST
CHICAGO IL 60620



FIFTH THIRD BANK

Date: April 20, 2020
Account: *******0293

### Urgent Notice Regarding Your Line of Credit

Dear LEONARD A MCGEE:

We are contacting you with a serious matter regarding your Fifth Third line of credit (above) and actions we have taken on your account.

**Based on a recent review of your account, we are permanently suspending your ability to access funds through your line of credit, effective immediately.** We have initiated this suspension in accordance with the agreement you signed when you obtained your Fifth Third line of credit. Our decision was based on the following:

- Proportion of balances to credit limits is too high on bank revolving or other revolving accounts
- Time since most recent account opening is too short
- Length of time accounts have been established
- Number of bank or national revolving accounts with balances

**What this means to you**
Not having access to funds from your line of credit will require some changes—and action—on your part. **Please be sure to address all of the points below that apply to your account.**

- If your line of credit is linked to a deposit account, such as a checking account, the line of credit will no longer provide overdraft protection for that account.

- If automatic deductions are made from a checking or savings account for monthly payments to your line of credit, these deductions will continue uninterrupted.

- If you use your line of credit to pay other bills automatically, please inform the payee(s) that payments will no longer be deducted from that account. Effective immediately, any automatic payments scheduled to be deducted from your line of credit will be declined.

- Any checks drawn on your suspended line of credit will be returned. If you wrote checks before you received this letter, please call us at 800-972-3030 to discuss handling these checks.

- You will continue to receive monthly account statements that include current payment information while you carry a balance on this account. We encourage you to continue to make payments to your line of credit account.

- If your balance is $0 and you would like to close this account, please contact us at 800-972-3030.

Fifth Third Bank, National Association. Member FDIC. ⌂ Equal Housing Lender. Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp.

FILED DATE: 5/14/2021 3:14 PM   2021L004998

FILED DATE: 5/14/2021 3:14 PM    2021L004998

**How we arrived at our decision**
Our decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. This reporting agency played no part in our decision and cannot provide specific reasons for our decision.

Under the Fair Credit Reporting Act:
- You have the right to know the information contained in your credit file at the consumer reporting agency.
- You are entitled to a free copy of your credit report if requested within 60 days after you receive this notice.
- If you feel any of the information in the report you receive is inaccurate or incomplete, you have the right to dispute it directly with the reporting agency below.

Equifax Credit Information Services
P.O. Box 740241
Atlanta GA 30374-0241
Phone: 800-685-1111

**Information about your credit score**
We also obtained your credit score from the consumer reporting agency and used it in making our decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change depending on how the information in your consumer report changes.

- Your credit score as of April 6, 2020 is 626.
- Scores range from a low of 300 to a high of 850.
- Key factors that adversely affected your credit score:
  - Proportion of balances to credit limits is too high on bank revolving or other revolving accounts
  - Time since most recent account opening is too short
  - Length of time accounts have been established
  - Number of bank or national revolving accounts with balances
  - Too many inquiries last 12 months

If you have any questions regarding your credit score, you should contact the reporting agency listed below.

Equifax Credit Information Services
P.O. Box 740241
Atlanta GA 30374-0241
Phone: 800-685-1111

**How to reach us**
If you have questions, please contact us at 800-972-3030, Monday through Friday, 7 a.m. to 8 p.m., ET.

Thank you.

Sincerely,

P. Brian Moore
Senior Vice President

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20006.

BANKRUPTCY NOTICE: To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this letter is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, Creditor retains rights under its security instrument, including the right to foreclose its lien. Any negotiations or arrangements entered into do not constitute a waiver of your discharge, an attempt to collect against you personally or an attempt to revive your personal liability for the debt.

Fifth Third Bank
5050 Kingsley Drive
MD 1MOB1N
Cincinnati OH 45263

394

LEONARD A MCGEE
8956 S BISHOP ST
CHICAGO IL 60620



FIFTH THIRD BANK

FILED DATE: 5/14/2021 3:14 PM   2021L004998

Date:    April 20, 2020
Account:  *******0457

### Urgent Notice Regarding Your Line of Credit

Dear LEONARD A MCGEE:

We are contacting you with a serious matter regarding your Fifth Third line of credit (above) and actions we have taken on your account.

**Based on a recent review of your account, we are permanently suspending your ability to access funds through your line of credit, effective immediately.** We have initiated this suspension in accordance with the agreement you signed when you obtained your Fifth Third line of credit. Our decision was based on the following:

- Proportion of balances to credit limits is too high on bank revolving or other revolving accounts
- Time since most recent account opening is too short
- Length of time accounts have been established
- Number of bank or national revolving accounts with balances

**What this means to you**
Not having access to funds from your line of credit will require some changes—and action—on your part. **Please be sure to address all of the points below that apply to your account.**

- If your line of credit is linked to a deposit account, such as a checking account, the line of credit will no longer provide overdraft protection for that account.

- If automatic deductions are made from a checking or savings account for monthly payments to your line of credit, these deductions will continue uninterrupted.

- If you use your line of credit to pay other bills automatically, please inform the payee(s) that payments will no longer be deducted from that account. Effective immediately, any automatic payments scheduled to be deducted from your line of credit will be declined.

- Any checks drawn on your suspended line of credit will be returned. If you wrote checks before you received this letter, please call us at 800-972-3030 to discuss handling these checks.

- You will continue to receive monthly account statements that include current payment information while you carry a balance on this account. We encourage you to continue to make payments to your line of credit account.

- If your balance is $0 and you would like to close this account, please contact us at 800-972-3030.

Fifth Third Bank, National Association. Member FDIC. ⌂ Equal Housing Lender. Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp.

**How we arrived at our decision**

Our decision was based in whole or in part on information obtained in a report from the consumer reporting agency listed below. This reporting agency played no part in our decision and cannot provide specific reasons for our decision.

Under the Fair Credit Reporting Act:

- You have the right to know the information contained in your credit file at the consumer reporting agency.
- You are entitled to a free copy of your credit report if requested within 60 days after you receive this notice.
- If you feel any of the information in the report you receive is inaccurate or incomplete, you have the right to dispute it directly with the reporting agency below.

> Equifax Credit Information Services
> P.O. Box 740241
> Atlanta GA 30374-0241
> Phone: 800-685-1111

**Information about your credit score**

We also obtained your credit score from the consumer reporting agency and used it in making our decision. Your credit score is a number that reflects the information in your consumer report. Your credit score can change depending on how the information in your consumer report changes.

- Your credit score as of April 6, 2020 is 626.
- Scores range from a low of 300 to a high of 850.
- Key factors that adversely affected your credit score:
  - Proportion of balances to credit limits is too high on bank revolving or other revolving accounts
  - Time since most recent account opening is too short
  - Length of time accounts have been established
  - Number of bank or national revolving accounts with balances
  - Too many inquiries last 12 months

If you have any questions regarding your credit score, you should contact the reporting agency listed below.

> Equifax Credit Information Services
> P.O. Box 740241
> Atlanta GA 30374-0241
> Phone: 800-685-1111

**How to reach us**

If you have questions, please contact us at 800-972-3030, Monday through Friday, 7 a.m. to 8 p.m., ET.

Thank you.

Sincerely,

P. Brian Moore
Senior Vice President

Notice: The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The Federal agency that administers compliance with this law concerning this creditor is the Consumer Financial Protection Bureau, 1700 G Street NW, Washington, DC 20006.

BANKRUPTCY NOTICE: To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this letter is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, Creditor retains rights under its security instrument, including the right to foreclose its lien. Any negotiations or arrangements entered into do not constitute a waiver of your discharge, an attempt to collect against you personally or an attempt to revive your personal liability for the debt.

FILED DATE: 5/14/2021 3:14 PM   2021L004998

**EXHIBIT E**



**FIFTH THIRD BANK**

FILED DATE: 5/14/2021 3:14 PM    2021L004998

5050 Kingsley Drive
MD 1MOCOP
Cincinnati OH 45263

Leonard A McGee
8956 S Bishop Street
Chicago IL 60620

| | |
|---|---|
| Date: | March 25, 2021 |
| Account: | *****5223 |
| Account: | *****0293 |
| Account: | *****0457 |

**Regarding Your Unsecured FlexLine Accounts**

Dear Leonard A McGee:

We received a copy of the rebuttal you filed with the Better Business Bureau concerning your FlexLine accounts. We appreciate the time you have taken to document your thoughts regarding this matter.

On behalf of the Bank, please accept my sincere apologies for any inconvenience or frustration this matter may have caused you. However, we stand by the responses conveyed in our previous letter sent to the address above dated March 11, 2021. I have enclosed a copy of the letter for your convenience.

Additionally, we have thoroughly reviewed your concerns regarding information obtained by your personal banker. Our research was unable to locate the conversations or email record regarding our internal loan review processes. Please accept my apology for any misinformation that may have been given. An annual credit review is completed systematically, and blocks are determined by the information obtained by the credit bureaus. Fifth Third Bank has no control over their point system.

Fifth Third Bank, National Association. Member FDIC. ⌂ Equal Housing Lender. Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp.



# FIFTH THIRD BANK

FILED DATE: 5/14/2021 3:14 PM   2021L004998

Thank you for your patience while we researched this matter for you. If I could be of further assistance to you, please contact me directly at 616-653-9156, or toll free at 866-360-5353, Monday through Friday, 8 a.m. to 5 p.m., ET.

Sincerely,

*Stephanie Witherell*

Stephanie Witherell
Office of the President

Pc: Better Business Bureau

Enclosure: Previous Letter

2

Firefox

https://usa.experian.com/member/printable-report/experian/now



Prepared For LEONARD A. MCGEE    Date generated: Apr 7, 2021

**FIFTH THIRD BANK NA**

payment history

$15,112

Balance updated Mar 31, 2021

## Account info

| Account name | FIFTH THIRD BANK NA | Balance | $15,112 |
|---|---|---|---|
| Account number | 8XXXX | Balance updated | Mar 31, 2021 |
| Original creditor | - | Credit limit | $18,600 |
| Company sold | - | Usage | 81% |
| Account type | Check Credit Or Line Of Credit | Monthly payment | $289 |
| Date opened | Nov 14, 2018 | Past due amount | - |
| Account status | Open | Highest balance | $18,326 |
| Payment status | Current | Terms | Revolving |
| Status updated | Mar 2021 | Responsibility | Individual |
| | | Your statement | - |

## Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | | — | | | | | | | | | | |
| 2020 | | | · · | | | | | | | | | |
| 2019 | | | | | | | | | | · | | · |
| 2018 | | | | | | | | | | | | |

On-time    →    Data unavailable

## Contact info

| Address | 5050 KINGSLEY DR CINCINNATI, OH 45227 |
|---|---|
| Phone number | (800) 972 3030 |

## Comments

Credit line suspended



Prepared For LEONARD A. MCGEE    Date generated: Apr 7, 2021

FILED DATE: 5/14/2021 3:14 PM    2021L004998

**FIFTH THIRD BANK NA**

payment history

$15,112

Balance updated Mar 31, 2021

## Account info

| | | | |
|---|---|---|---|
| Account name | FIFTH THIRD BANK NA | Balance | $15,112 |
| Account number | 8XXXX | Balance updated | Mar 31, 2021 |
| Original creditor | - | Credit limit | $18,600 |
| Company sold | - | Usage | 81% |
| Account type | Check Credit Or Line Of Credit | Monthly payment | $289 |
| Date opened | Nov 09, 2018 | Past due amount | |
| Account status | Open | Highest balance | $18,345 |
| Payment status | Current | Terms | Revolving |
| Status updated | Mar 2021 | Responsibility | Individual |
| | | Your statement | . |

## Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | . | | | | | | | | | | | |
| 2020 | . | | | | | | | | | | | |
| 2019 | | | | | | | | | | | | |
| 2018 | | | | | | | | | | | | |

No data    —    Not available

## Contact info

Address          5050 KINGSLEY DR CINCINNATI,
                 OH 45227

Phone number     (800) 972-3030

## Comments

Credit line suspended



Prepared For LEONARD A. MCGEE    Date generated: Apr 7, 2021

**FIFTH THIRD BANK NA**

payment history

$8,577

Balance updated Mar 31, 2021

## Account info

| | | | |
|---|---|---|---|
| Account name | FIFTH THIRD BANK NA | Balance | $8,577 |
| Account number | 8XXXX | Balance updated | Mar 31, 2021 |
| Original creditor | - | Credit limit | $10,800 |
| Company sold | - | Usage | 79% |
| Account type | Check Credit Or Line Of Credit | Monthly payment | $189 |
| Date opened | May 02, 2018 | Past due amount | |
| Account status | Open | Highest balance | $10,500 |
| Payment status | Current | Terms | Revolving |
| Status updated | Mar 2021 | Responsibility | Individual |
| | | Your statement | . |

## Payment history

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | | | | | | | | | | | | |
| 2020 | | | | | | | | | | | | |
| 2019 | | | | | | | | | | | | |
| 2018 | | | | | | | | | | | | |

On time    —    Item unavailable

## Contact info

Address          5050 KINGSLEY DR CINCINNATI,
                 OH 45227

Phone number     (800) 972-3030

## Comments

Credit line suspended

FILED DATE: 5/14/2021 3:14 PM    2021L004998

4/10/2021

Credit Report | myEquifax

*my*Equifax

Leonard McGee   0

Home

## Your Equifax credit report

As of **April 10, 2021**

YOUR CREDIT

**Credit Report** ⌃

Credit Report date

Equifax - April 10, 2021

Summary

You still have **5 of 6 free Equifax credit reports** available before April 10, 2022.

**Revolving
Accounts**

Get my free credit report

Mortgage Accounts

< Back

Installment
Accounts

Other Accounts

# FIFTH THIRD BANK, N.A.

Report Date: Apr 10, 2021

Consumer
Statements

Personal
Information

| $15,112 | ÷ | $18,600 | = | 81% |
|---|---|---|---|---|
| Reported Balance | | Credit Limit | | Credit Utilization |

Inquiries

Public Records

Collections

Your Rights

**Details**     Payments

## Overview

YOUR IDENTITY

| | | | |
|---|---|---|---|
| Account Number | xxxxx 0457 | Months Reviewed | 27 |
| Account Status | PAYS_AS_AGREED | Activity Designator | |
| Owner | INDIVIDUAL | Terms Frequency | MONTHLY |
| Account Type | REVOLVING | Term Duration | |
| Creditor Classification | | Purchased From | |
| Loan Type | LINE_OF_CREDIT | Sold To | |
| Original Creditor Name | | | |

Freeze

Fraud & Active Duty
Alerts

Dispute Center

## Balance and Amounts     Account Dates

| | | | |
|---|---|---|---|
| Balance | $15,112 | Date Opened | Nov 14, 2018 |
| Credit Limit | $18,600 | Date Reported | Mar 31, 2021 |
| High Credit | $18,326 | Date of Last Activity | Mar 01, 2021 |
| Available Credit | $3,488 | Date of First Delinquency | |

Products for You

## Comments and Contact

CREDIT LINE SUSPENDED/VARIABLE/ADJUSTABLE RATE

For questions regarding this account please contact:

FIFTH THIRD BANK, N.A

FILED DATE: 5/14/2021 3:14 PM 2021L004998

4/10/2021                                                 Credit Report ¦ myEquifax



5050 KINGSLEY DRIVE MD 1MOCOP
CINCINNATI, OH 45263
(800) 972-3030

## Disputes

If you find information in your credit report that you believe is incomplete or
inaccurate, click FILE A DISPUTE.

**FILE A DISPUTE**

**EFX**®

Copyright 2021 Equifax Inc. All rights reserved.

Equifax and the Equifax marks used herein are trademarks of Equifax Inc. Other
product and company names mentioned herein are the property of their
respective owners.

Privacy Policy

Terms of Use    Ad Choices

FILED DATE: 5/14/2021 3:14 PM    2021L004998

4/10/2021

Credit Report | myEquifax

_my_**Equifax**

Leonard McGee  0

Home

## Your Equifax credit report

As of **April 10, 2021**

**YOUR CREDIT**

**Credit Report** ∧

Credit Report date

Equifax - April 10, 2021

Summary

You still have **5 of 6 free Equifax credit reports** available before **April 10, 2022**.

**Revolving
Accounts**

Get my free credit report

Mortgage Accounts

‹ Back

Installment
Accounts

Other Accounts

# FIFTH THIRD BANK, N.A.

Consumer
Statements

Report Date: Apr 10, 2021

Personal
Information

$15,112   ÷   $18,600   =   81%

Inquiries

Public Records

Collections

**Details**        Payments

Your Rights

## Overview

**YOUR IDENTITY**

Freeze

| | | | |
|---|---|---|---|
| Account Number | xxxxx 0293 | Months Reviewed | 27 |
| Account Status | PAYS_AS_AGREED | Activity Designator | |
| Owner | INDIVIDUAL | Terms Frequency | MONTHLY |
| Account Type | REVOLVING | Term Duration | |
| Creditor Classification | | Purchased From | |
| Loan Type | LINE_OF_CREDIT | Sold To | |
| Original Creditor Name | | | |

Fraud & Active Duty
Alerts

## Balance and Amounts                    Account Dates

| | | | |
|---|---|---|---|
| Balance | $15,112 | Date Opened | Nov 09, 2018 |
| Credit Limit | $18,600 | Date Reported | Mar 31, 2021 |
| High Credit | $18,345 | Date of Last Activity | Mar 01, 2021 |
| Available Credit | $3,488 | Date of First Delinquency | |

Dispute Center

Products for You

## Comments and Contact

CREDIT LINE SUSPENDEDVARIABLE/ADJUSTABLE RATE

For questions regarding this account please contact:

FIFTH THIRD BANK, N.A.

FILED DATE: 5/14/2021 3:14 PM   2021L004998

Credit Report | myEquifax



5050 KINGSLEY DRIVE MD IMOCOP
CINCINNATI, OH 45263
(800) 972-3030

## Disputes

If you find information in your credit report that you believe is incomplete or
inaccurate, click FILE A DISPUTE.



FILE A DISPUTE

**EFX**                                                                Privacy Policy
Copyright 2021 Equifax Inc. All rights reserved.                    Terms of Use | Ad Choices

Equifax and the Equifax marks used herein are trademarks of Equifax Inc. Other
product and company names mentioned herein are the property of their
respective owners.

FILED DATE: 5/14/2021 3:14 PM   2021L004998

4/10/2021               Credit Report | myEquifax

FILED DATE: 5/14/2021 3:14 PM 2021L004998

*my* **Equifax**

Leonard McGee  

## Your Equifax credit report

As of **April 10, 2021**

**YOUR CREDIT**

**Credit Report** ︿

Summary

**Revolving Accounts**

Mortgage Accounts

Installment Accounts

Other Accounts

Consumer Statements

Personal Information

Inquiries

Public Records

Collections

Your Rights

**YOUR IDENTITY**

Freeze

Fraud & Active Duty Alerts

Dispute Center

Products for You

Credit Report date

Equifax - April 10, 2021

You still have **5 of 6 free Equifax credit reports** available before April 10, 2022.

Get my free credit report

‹ Back

# FIFTH THIRD BANK, N.A.

Report Date: Apr 10, 2021

$8,577 ÷ $10,800 = 79%

**Details**     Payments

## Overview

| | | | |
|---|---|---|---|
| Account Number | xxxxx 5223 | Months Reviewed | 33 |
| Account Status | PAYS_AS_AGREED | Activity Designator | |
| Owner | INDIVIDUAL | Terms Frequency | MONTHLY |
| Account Type | REVOLVING | Term Duration | |
| Creditor Classification | | Purchased From | |
| Loan Type | LINE_OF_CREDIT | Sold To | |
| Original Creditor Name | | | |

## Balance and Amounts     Account Dates

| | | | |
|---|---|---|---|
| Balance | $8,577 | Date Opened | May 02, 2018 |
| Credit Limit | $10,800 | Date Reported | Mar 31, 2021 |
| High Credit | $10,500 | Date of Last Activity | Mar 01, 2021 |
| Available Credit | $2,223 | Date of First Delinquency | |

## Comments and Contact

CREDIT LINE SUSPENDEDVARIABLE/ADJUSTABLE RATE

For questions regarding this account please contact:

**FIFTH THIRD BANK N A**



FILED DATE: 5/14/2021 3:14 PM    2021L004998

Prepared For
**LEONARD A. MCGEE**
Personal & confidential
Date generated: Feb 3, 2020

## At a glance

### FICO® Score 8

**734** FICO SCORE 8
Experian data Feb 3, 2020

300 ▼ 850

**Account summary**

| | |
|---|---|
| Open accounts | 23 |
| Self-reported accounts | 0 |
| Accounts ever late | 0 |
| Closed accounts | 8 |
| Collections | 0 |
| Average account age | 3 yrs 3 mos |
| Oldest account | 14 yrs 3 mos |

**Overall credit usage**

**0 %**

**Debt summary**

| | |
|---|---|
| Credit card and credit line debt | $100 |
| Self-reported account balance | $0 |
| Loan debt | $23,961 |
| Collections debt | $0 |
| Total debt | $24,061 |

■ Credit used: $100
Credit limit: $156,000